Eastern District of Kentucky
**FILED**
JUL 2 2 2008
AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | |
|---|---|
| DANIEL SULLIVAN, | ) |
| Plaintiff, | ) Civil Action No. 5:07-254-JMH |
| v. | ) |
| AMERICAN INTERNATIONAL GROUP, INC., AIG RISK MANAGEMENT, INC., a/k/a AIG - THE TRUCK INSURANCE GROUP, and ILLINOIS NATIONAL INSURANCE COMPANY, | ) **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) |

\*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court on Plaintiff's motion in limine to exclude the proposed expert testimony of James E. Keller [Record No. 36]. Defendants having responded [Record No. 38] and Plaintiff having replied [Record No. 39], this matter is now ripe for review.

**Background**

This negligence and bad faith case arises out of an August 19, 2004, motor vehicle accident in Fayette County, Kentucky. Plaintiff Daniel Sullivan and Manuel Bergel, who was employed by and driving for Express Cargo Service at the time of the accident, were involved in the accident.[1] At the time of the accident, Bergel and Express Cargo Service were insured under a policy issued by Defendant Illinois National Insurance Company ("Illinois

---

[1] Manuel Bergel and Express Cargo Service were defendants in this action, however, Plaintiff's claims against Bergel and Express Cargo Service have been settled.

National"). Defendant AIG - The Truck Insurance Group ("AIG"), adjusted the claim.

In addition to his claims for personal injury, medical expenses, and a permanent loss of earning capacity (Pl's Second Amended Compl. at 4-5), Plaintiff claims that Defendants AIG and Illinois National engaged in bad faith settlement practices surrounding his insurance claim. *Id.* at 6. In support of his bad faith claim, Plaintiff alleges that Defendants not only made a delayed, inadequate, and unreasonable offer of settlement, but that they also "fabricated surveillance reports in order to assert conduct by the Plaintiff that did not occur and/or to deliberately mischaracterize the actual results of their surveillance." *Id.* at 6. Plaintiff further alleges that Defendants failed to disclose the surveillance tapes, despite interrogatories that requested such information. Finally, Plaintiff avers that Defendants only revealed the existence of the tapes several hours into a mediation session, failed to allow Plaintiff to view the tapes, and "attempted to use the existence of the surveillance to put the Plaintiff under duress so that the Plaintiff would settle the case for less than its fair value." *Id.* at 7.

The instant motion concerns Defendants' intentions to offer James E. Keller, former judge of the Fayette County Circuit Court and former justice of the Supreme Court of Kentucky, as an expert

witness.[2] According to Defendants' Rule 26 Expert Disclosures [Record 30], Keller is expected to testify regarding:

a. The standards of conduct for investigating, evaluating, and adjusting casualty claims;
b. The standards for determining whether actions or omissions are consistent with good faith insurance practices for casualty companies;
c. When the acts or omissions of insurers or claims handlers in investigating, evaluating and adjusting a claim have a reasonable basis in fact and/or law;
d. Whether acts or omissions of insurers or claims handlers reflect ill will, malice or reckless disregard;
e. Whether policies, guidelines and/or practices of insurers or claims handlers regarding investigations, claims adjusting, negotiations and evaluations are consistent with good faith insurance practices of casualty companies and the law;
f. What constitutes timely and proper claims handling consistent with good faith insurance practice;
g. What constitutes a reasonable and prompt investigation and evaluation in order to effectuate a fair and equitable settlement based upon all available information;
h. What constitutes litigation conduct as it relates to claims of bad faith;
i. How mediations are conducted and what constitutes fair and reasonable behavior with regard to settlement negotiations; and
j. The respective roles of counsel and mediator at mediations.

Record No. 30 at 1-2. Plaintiff moves the Court to exclude the proposed expert testimony of Keller, arguing that Keller is not qualified to speak an as expert on the above-listed issues, and that even if Keller were qualified, his testimony would not be relevant or reliable.

---

[2] Keller is currently employed as special counsel to the law firm of Gess, Mattingly, and Atchison, PLLC.

3

**Applicable Law**

Defendants, as proponents of Keller's testimony, must establish its admissibility by "a preponderance of proof." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593 n.10 (1993) (citing Fed. R. Evid. 104(a); *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)). Federal Rule of Evidence ("FRE") 702 addresses whether an expert is qualified to testify. *See Legg v. Chopra*, 286 F.3d 286, 290-91 (6th Cir. 2002). FRE 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The Supreme Court in *Daubert* held that the trial court must determine "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Daubert*, 509 U.S. at 592. Several factors were identified in *Daubert* that ordinarily will aid the trial court in determining whether the expert's testimony is helpful to the trier of fact, including (1) "whether a theory or technique . . . can be (and has been) tested"; 2) "whether the theory or technique has been subjected to peer review and publication"; (3) "the known or potential rate of

4

error"; and (4) general acceptance in the scientific community. *Id.* at 593-95.

Although *Daubert* involved scientific evidence, the Supreme Court in *Kuhmo Tire Co. v. Carmichael,* 526 U.S. 137 (1999), held that the *Daubert* factors may be considered by a trial court for all types of expert evidence. The Court noted, however, that the list of factors are non-exhaustive and may not be pertinent in some cases where "the relevant reliability concerns may focus upon personal knowledge or experience." *Kuhmo Tire*, 526 U.S. at 150; *see First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 335 (6th Cir. 2001).

## Discussion

Defendants proffer Keller as an expert on two distinct subject matters: 1) standards and practices surrounding the investigating, evaluation, adjusting, and litigating of insurance claims, represented by above-listed items "a" thru "h"; and 2) standards and practices of settlement negotiations and mediations, represented by items "i" and "j" above.

### Bad Faith Insurance Claims

In his deposition, Keller testified to the following: He has never adjusted an insurance claim or managed individuals who did (Keller June 13, 2008 dep. 26); he has never been an officer or director of an insurance company (*id.*); he has never taken a class on adjusting, evaluating or handling insurance casualty claims

5

(*id.*); he handled "a few" bad faith cases as a trial court judge, none of which were tried (*id.* at 21); he never handled a bad faith case while in private practice (*id.* at 20); prior to this case, he has only ever reviewed two or three other insurance company claims files (*id.* at 18); that his review of the two or three other claims files occurred within the past few months (*id.* at 19); and he never published peer-reviewed articles, treatises or books on the subject of bad faith (*id.* at 30). Notably, in their response in opposition to Plaintiff's motion to exclude Keller's testimony, Defendants themselves offer little to support their position that Keller is an expert on bad faith claims, focusing instead on Keller's qualifications "to testify as an expert regarding mediations, settlement negotiations, and discovery conduct due to his extensive background as an attorney, judge and mediator." Record No. 38 at 2.

Based upon Keller's own testimony, the Court finds that Keller lacks the "knowledge, skill, experience, training, or education," FRE 702, to qualify as an expert on the subject of investigating, adjusting, evaluating, and litigating bad faith insurance claims. Keller was qualified as an expert on bad faith insurance claims in the case of *Allstate v. Hager*, Fayette Circuit Court, 98-CI-2482 (Keller dep. at 45)[3]; however, based on Keller's lack of

---

[3] Ironically, it was Plaintiff's counsel in this action who offered Keller as a bad faith expert in *Hager*, but that does not change the fact that Keller is not an expert on bad faith insurance

6

experience, education, training, knowledge and skill in the area of bad faith insurance claims, this Court does not find that fact determinative of the outcome of the instant motion. While former Justice Keller may be a learned jurist, by his own admissions, he is not an expert on bad faith claims.

The parties debate the importance of *Farmland Mut. Ins. Co. v. Johnson*, 36 S.W.3d 368 (Ky. 2000), a ruling handed down while former justice Keller was a member of the Supreme Court, but the Court does not find *Farmland* to dictate the outcome of this matter. While one issue in *Farmland* was whether or not the trial court erred in refusing to allow a proffered witness to testify as an expert on the subject of bad faith insurance claims, the *Farmland* Court did not expound upon how much knowledge, skill, experience, education, or training in the area of bad faith litigation was enough to qualify one as an expert in the area, ruling only that the trial judge did not abuse his discretion in refusing to qualify two proffered witnesses as experts.

**Settlement and Mediation Standards and Practices**

Defendants insist that Keller is qualified to give expert testimony regarding "acceptable conduct for parties in settlement negotiations, during mediations, and in conducting litigation." Record No. 38 at 12. After thoroughly reviewing Plaintiff's motion in limine, the Court does not see that Plaintiff specifically

---

litigation.

7

objected to Keller being qualified as an expert on the standards and practices of settlement conferences and mediations, but to the extent that Plaintiff did object, any such objection is overruled for the reasons that follow. While Keller is not qualified as an expert on the subject of bad faith claims, his experience in conducting settlement conferences and mediations renders him an expert on the standards and practices of settlement conferences and mediations.

A review of Keller's curriculum vitae and affidavit reveals the length and breadth of his experience in negotiating settlements and conducting mediations. A Fayette County Circuit Court judge for twenty-three years, Keller served as the settlement conference judge, conducting 65-75 percent of the court's settlement conferences. Record No. 38, Ex. 2, ¶1. Keller is certified as a civil mediator by the administrative office of the Kentucky courts of justice, and co-founded the Mediation Center of Kentucky. Record No. 38, Ex. 1 at 15. He also founded a mediation program for contested custody proceedings. *Id.* at 16. The Court finds that Keller's experience conducting settlement and mediation conferences renders him particularly suitable for providing the jury with relevant, reliable information to help them understand standard mediation and settlement negotiation practices, specialized knowledge which is not known to the average person. Because Keller's experience has been limited to the role of a judge

8

presiding over settlement conferences or the role of mediator, not that of an attorney negotiating on behalf of a client, Keller's testimony regarding the standards and practices of settlement conferences and mediations shall be limited to those standards and practices which are known to or observed by a judge presiding over a settlement conference or a mediator conducting a mediation.

## Conclusion

Accordingly, and for the foregoing reasons, **IT IS ORDERED** that Plaintiff's motion [Record No. 36] be, and the same hereby is, **GRANTED IN PART AND DENIED IN PART** as follows:

1) Plaintiff's motion is **GRANTED** to the extent that it seeks to preclude James E. Keller from testifying as to items "a" thru "h," as listed above; and

2) Plaintiff's motion is **DENIED** to the extent that it seeks to preclude James E. Keller from testifying as to items "i" and "j," as listed above.

This the 22nd day of July, 2008.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge

9