UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

DANIEL SULLIVAN,                          )
                                          )
        Plaintiff,                        )   Civil Action No. 5:07-254-JMH
                                          )
v.                                        )
                                          )
AMERICAN INTERNATIONAL GROUP,             )
INC., AIG RISK MANAGEMENT,                )   **MEMORANDUM OPINION AND ORDER**
INC., a/k/a AIG - THE TRUCK               )
INSURANCE GROUP, and ILLINOIS             )
NATIONAL INSURANCE COMPANY,               )
                                          )
        Defendants.                       )

** ** ** ** ** **

This matter is before the Court on several motions for summary judgment, including: Defendant AIG's Motion for Summary Judgment [Record No. 45]; Defendants' Motion for Summary Judgment on Claims of Mental Anguish [Record No. 46]; Defendants' Motion for Summary Judgment on claims of bad faith [Record No. 47]; and Plaintiff's Motion for Partial Summary Judgment as to liability [Record No. 48]. The parties having responded and replied, the matters are now ripe for review.

## I. Background

This action arises out of an August 19, 2004, motor vehicle accident in Fayette County, Kentucky. Plaintiff Daniel Sullivan and Manuel Bergel, who was employed by and driving for Express Cargo Service at the time of the accident, were involved in the

accident.[1]  At the time of the accident, Bergel and Express Cargo Service were insured under a policy issued by Defendant Illinois National Insurance Company ("Illinois National").  Defendant AIG – The Truck Insurance Group ("AIG"), acted as the claims handler for Plaintiff's personal injury claim.

Plaintiff's personal injury claim was litigated in Fayette County Circuit Court.  The insured conceded liability, leaving only real issue in the case the value of Plaintiff's claim.  The parties engaged in mediation on January 11, 2006.  Approximately three months after the mediation, Plaintiff accepted $175,000 plus expenses in full settlement of his claim. [Record No. 47, Ex. S, Timothy Feld deposition at 100].

In this action, Plaintiff sets forth a number of causes of action against defendants Illinois National and AIG, including violation of the Kentucky Unfair Claims Settlement Practice Act (Count I), violation of the Kentucky Consumer Protection Act (Count II), abuse of process (Count III) and fraud (Count IV). Additionally, Plaintiff seeks an award of punitive damages on each of his claims.

The gravamen of Plaintiff's Complaint concerns the handling of his personal injury claim.  Specifically, Plaintiff complains that Defendants acted in bad faith by failing to take "any steps to

---

[1]  Manuel Bergel and Express Cargo Service were defendants in this action, however, Plaintiff's claims against Bergel and Express Cargo Service have been resolved.

2

evaluate, adjust, respond to, investigate, settle, or otherwise resolve the Plaintiff's claims." [Pl. Second Am. Compl. 5]. Plaintiff also alleges that Defendants acted in bad faith by failing to disclose the existence of the surveillance tapes until three hours into the mediation session.

## II.  Standard of Review

A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This burden is met simply by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id.* at 325.  The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. *Celotex*, 477 U.S. at 325.

When determining if summary judgment is proper, the Court's function is not to weigh the evidence, but to decide whether there are genuine factual issues for trial. *Anderson v. Liberty Lobby,*

3

*Inc.*, 477 U.S. 242, 249 (1986); *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004).  A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248; *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004).  The evidence should be construed in the light most favorable to the nonmoving party when deciding whether there is enough evidence to overcome summary judgment.  *Anderson*, 477 U.S. at 255; *Summers*, 368 F.3d at 885. While this Court must draw all inferences in a light most favorable to the plaintiff, summary judgment may be granted "if the record, taken as a whole, could not lead a rational trier of fact to find for [the plaintiff]." *McKinnie v. Roadway Express*, 341 F.3d 554, 557 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

### III.  Analysis

**A.   AIG's Motion for Summary Judgment**

Plaintiff's claim for violations of the Kentucky Unfair Claims Settlement Practices Act ("UCSPA"), KRS 304.12-230, for failure to timely pay his claim and failure to provide a reasonable explanation of the basis for its denial of his settlement offer must fail as to Defendant AIG because such claims under the UCSPA depend on the presence of a contract of insurance by and between a plaintiff and a defendant.  Certainly, 304.12-230 prohibits a

4

"person" from committing the wrongs described therein, and, for the purposes of Chapter 304, the term "person":

> . . . includes an individual, insurer, company, association, organization, Lloyd's insurer, society, reciprocal insurer or inter-insurance exchange, partnership, syndicate, business trust or corporation, and every other related legal entity.

KRS 304.1-020. The definition of a "person" as an "individual" is, however:

> . . . intended to apply only to "an individual . . ." who is engaged in the business of insurance; otherwise, the last clause of the definition would be superfluous. The broad nature of the definition anticipates that even an individual who is not a licensed insurer might enter into "a *contract* whereby one undertakes to pay or indemnify another as to loss from certain specified contingencies or perils called 'risks,' " KRS 304.1-030 (definition of "insurance") (emphasis added), and thereby engage "in the *business of entering into contracts of insurance.*" KRS 304.1-040 (definition of "insurer") (emphasis added). Nothing in any of these statutes evidences a legislative intent that the Kentucky Insurance Code was designed to regulate persons who are neither insured nor engaged in the business of entering into contracts of insurance.

*Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 98 (Ky. 2000); *see also Kentucky Nat. Ins. Co. v. Shaffer*, 155 S.W.3d 738, 741-42 (Ky. Ct. App. 2004) (in absence of contractual obligation in insurance policy for coverage, there can be no claim for bad faith).

Defendant AIG is not an individual in the sense intended by the UCSPA. Plaintiff does not aver that he ever entered into a

contract with Defendant AIG whereby Defendant AIG undertook to pay or indemnify him as to any loss from certain specified contingencies or perils. Rather, Plaintiff alleges that he entered into such a contract with Defendant AIG's principal, Illinois National. Accordingly, the allegations of violations of KRS 304.12-230 must fail as a matter of law with regard to Defendant AIG.

The Court notes Plaintiff's argument that no Kentucky court has found that a claims handling agent such as Defendant AIG cannot be held liable for bad faith, but does not find such an argument persuasive. Plaintiff did not have a contractual relationship with AIG. Consequently, although acting as an agent of Illinois National who did owe a duty to good faith to Plaintiff, AIG not did owe such a duty and cannot be held liable for bad faith. *Davidson,* 25 S.W.3d at 100 ("Absent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute.").

**B.  Bad Faith**

Plaintiff's bad faith claim has essentially two components, the first being the alleged untimeliness of Defendants' settlement offer and the reasonableness of Defendants' explanations of their denials of Plaintiff's demand, and the second being the propriety of the surveillance conducted on Plaintiff. Defendants' Motion for Summary Judgment on Plaintiff's bad faith claims [Record No. 47]

6

and Plaintiff's Motion for Partial Summary Judgment on the issue of
bad faith [Record No. 48] concern the same claim.  Accordingly, the
Court will address the motions simultaneously.

    **1.   Timeliness and Reasonableness of Explanation of Denial**

    The following timeline of events, which is not disputed by the
parties, is essential to the analysis of Plaintiff's concerns
regarding the timeliness of the handling of his claim.   On
September 14, 2004, one day after being notified of the accident,
Brandi O'Brien, casualty claims adjuster for AIG contacted
Plaintiff, who indicated that he was not interested in settling his
claim at that time. [Record No. 47, Ex. A, Claim Note].   After
receiving a medical records release authorization from Plaintiff,
Plaintiff's medical records were requested. [Record No. 47, Ex. B.
Claim Note].   After signing the medical records release, Plaintiff
obtained counsel and filed suit.   A January 6, 2005 claim note
indicates that it was not until that day that Defendants were made
aware of the lawsuit.[2] [Record No. 47, Ex. D, Claim Note].   The
very same day, January 6, 2005, O'Brien called Plaintiff's counsel,
Timothy Feld, and explained that Defendants were just apprised of
the lawsuit. [*Id.*].

    On January 13, 2005, Defendants requested a settlement demand
from attorney Feld by both leaving a message with his assistant and

---

    [2]  Defendants were never served with process in the original
action and default judgment was entered against them.   The default
judgment was set aside.

7

following up with a facsimile. [Record No. 47, Ex. E, Claim Note].
Upon receiving a phone call from AIG's casualty claims adjuster
Jeff Clinton, attorney Feld indicated that he would provide
Defendants with a settlement demand. [*Id.*].  By letter to Clinton
dated February 16, 2005, attorney Feld indicated that because they
were still evaluating Plaintiff's claim, Plaintiff could not make
a settlement demand at that time. [Record No. 47, Ex. F, Feld
letter of 2/16/05].

It was not until October 18, 2005 - over ten months after
Defendants formally solicited a settlement demand - that Plaintiff
made his first settlement demand of one million dollars, the policy
limit. [Record No. 47, Ex. I, Feld letter of 10/18/05].   On
November 14, 2005, AIG claims adjuster Michelle Troche called
attorney Feld to discuss Plaintiff's settlement demand.   Troche
noted that she informed Feld that the demand was "extreme and not
representative of what is owed," especially considering that AIG
had concerns regarding whether some of Plaintiff's injuries and
medical conditions were even related to the accident. [Record No.
47, Ex. J, Claim Note].

Unsatisfied with Troche's statement that she would take a
further look into the case, Feld wrote to Timothy Walker, counsel
for Defendants in the matter, demanding a response to Plaintiff's
one million dollar settlement demand by December 2, 2005, three
days from the date of the letter. [Record No. 48, Ex. 4, Feld

letter of 11/29/05]. On December 19, 2005, attorney Walker wrote to attorney Feld offering $10,000 in full settlement of the matter, indicating that the amount corresponded to the effects of the accident on Plaintiff. [Record No. 48, Ex. 5, Walker letter of 12/19/05]. Feld wrote to Walker again on December 28, 2005, requesting an explanation of the $10,000 offer. [Record No. 48, Ex. 7, Feld letter of 12/28/05]. Walker responded on January 9, 2006, explaining that the $10,000 offer was supported by expert reports of Plaintiff's condition. [Record No. 48, Ex. 8, Walker letter of 1/9/06]. Walker specifically noted that Plaintiff's "longstanding back and neck problems before the accident" played a role in arriving at the $10,000 figure, as well as the fact that Plaintiff would be able to perform "many kinds of jobs" even given the restrictions that were placed on Plaintiff by the expert. [*Id.*]. Defendants indicate that they were notified of Plaintiff's rejection of the $10,000 settlement offer during the mediation on January 11, 2006.

The UCSPA provides that it shall be an unfair claims settlement practice for any person, as defined by the UCSPA, to perform any of the following:

> (1) Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue;

> (2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

> (3) Failing to adopt and implement reasonable standards

for the prompt investigation of claims arising under insurance policies;

(4) Refusing to pay claims without conducting a reasonable investigation based upon all available information;

(5) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;

(6) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become

(7) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds;

(8) Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application;

(9) Attempting to settle claims on the basis of an application which was altered without notice to, or knowledge or consent of the insured;

(10) Making claims payments to insureds or beneficiaries not accompanied by statement setting forth the coverage under which the payments are being made;

(11) Making known to insureds or claimants a policy of appealing from arbitration awards in favor of insureds or claimants for the purpose of compelling them to accept settlements or compromises less than the amount awarded in arbitration;

(12) Delaying the investigation or payment of claims by requiring an insured, claimant, or the physician of either to submit a preliminary claim report and then requiring the subsequent submission of formal proof of loss forms, both of which submissions contain substantially the same information;

(13) Failing to promptly settle claims, where liability has become reasonably clear, under one (1) portion of the insurance policy coverage in order to influence

settlements under other portions of the insurance policy coverage;

(14) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement; or

(15) Failing to comply with the decision of an independent review entity to provide coverage for a covered person as a result of an external review in accordance with KRS 304.17A-621, 304.17A-623, and 304.17A-625.

KRS 304.12-230.

In order to prevail on his statutory bad faith claim, Plaintiff must prove that Illinois National's failure to promptly offer the reasonable value of his claim was outrageous, either because of an evil motive or reckless indifference to his rights. *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 452 (Ky. 1997). Plaintiff asserts that Illinois-National's bad faith is evidenced by its failure to timely respond to his settlement demand, the offer of a "lowball" settlement for $10,000, and its refusal to offer reasonable explanations for its rejection of Plaintiff's demand and its offer of $10,000.

Plaintiff's assertion that Illinois National engaged in bad faith settlement practices by failing to respond to his one million dollar demand within fifteen days as prescribed by 806 KAR 12:095(5)(3), is also without merit.  While 806 KAR 12:095(5)(3) does provide that "[t]he insurer shall make an appropriate reply within fifteen (15) days on all other pertinent communications from

11

a claimant which reasonably suggest that a response is expected," there is no private cause of action for a violation of the fifteen day requirement. "This administrative regulation establishes standards for the commissioner in investigations, examinations, and administrative adjudication and appeals therefrom. A violation of this administrative regulation shall be found only by the commissioner. This administrative regulation shall not create or imply a private cause of action for violation of this administrative regulation." 806 KAR 12:095(2)(3).

The UCSPA requires that those persons engaged in the business of insurance must "act reasonably promptly upon communications with respect to claims arising under insurance policies." KRS 304.12-230. Contrary to Plaintiff's contentions, Defendants promptly responded to Plaintiff's demand. Plaintiff did not make a settlement demand until October 18, 2005 - over ten months after Defendants requested a settlement demand on January 13, 2005. Claims adjuster Michelle Troche responded to that demand on November 14, 2005, informing Plaintiff's attorney that the demand was excessive and not in conformity with the injuries suffered by Plaintiff as a result of the accident. Apparently not understanding Troche's communication as a rejection of his one million dollar demand, Plaintiff's attorney wrote to Defendant's counsel, Timothy Walker, on November 29, 2005, demanding a response to Plaintiff's one million dollar settlement offer by December 2,

2005, a mere three days after the letter was penned.  By letter dated December 19, 2005, Walker countered Plaintiff's demand by offering $10,000 in full settlement of the matter.  Although Plaintiff requested an explanation of the offer by letter dated December 28, 2005, there is no indication that he rejected the offer until the January 11, 2006 mediation.  Defendants' responses to Plaintiff's demand were reasonably prompt.  Having waited over ten months for the settlement demand requested from Plaintiff, Defendants responded to that demand in twenty-seven days.  When Plaintiff demanded a formal rejection or acceptance of his offer on November 29, 2005, Defendants responded within twenty days.  There is no evidence that the lapse of time between Plaintiff's demands and Defendants' responses was the product of an evil intent or reckless indifference to Plaintiff's rights.  Certainly, the lapse of time was not outrageous.  Accordingly, Plaintiff's bad faith claim fails to the extent that it is premised on Defendants' failure to timely respond to Plaintiff's demand.

Plaintiff also asserts that by offering a "lowball" settlement of $10,000 when they had valued the claim at $15,000 to $20,000, Defendants violated the UCSPA's direction that an insurer must act in good faith to "effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear."  KRS 304.12-230(6).  Plaintiff correctly notes that according to the Agreed to Litigation Plan dated April 13, 2005, Defendants assessed

13

the settlement value of the claim at $15,000 to $20,000.   The Updated Agreed to Litigation Plan determined that the settlement value of the claim ranged from $15,000 to $100,000. [Record No. 48, Ex. 3, Updated Agreed to Litigation Plan].   This Court agrees with defense expert James E. Keller, whom this Court has qualified as an expert in the area of settlement negotiation standards and practices, that it is not necessarily evidence of bad faith to make an initial offer below the assessed value of the case. [Record No. 51, Ex. D, Keller depo. at 60].   Plaintiff has offered no evidence that Defendants' initial offer was made with an evil motive or with any intent other than to make an initial offer less than the assessed value with the intention of reaching a value within the assessed range through the course of negotiations.

The UCSPA provides that an insurer has a duty to "promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement."   KRS 304.12-230(14).   Plaintiff contends that Defendants violated this provision of the UCSPA.   Defendants first responded to Plaintiff's one million dollar demand, made on October 18, 2005, when claims adjuster Troche phoned Plaintiff's attorney and explained Defendants' position that the demand was extremely high and not representative of Plaintiff's injuries as a result of the accident. Troche noted that Defendants did not believe some of Plaintiff's

14

injuries were attributable to the accident, especially considering Plaintiff's pre-existing conditions of back and neck pain and radiculopathy. [Record No. 47, Ex. J, Claim Note; Record No. 48, Ex. 3, Updated Agreed to Litigation Plan].

Plaintiff's attorney wrote to Defendants' counsel Timothy Walker on November 29, 2005, stating that Troche's response that AIG would "have to look further into [the claim]" was not satisfactory and demanding a response to Plaintiff's demand by December 2, 2005. Walker responded on December 19, 2005, offering $10,000 to settle the claim, stating that Defendants felt this amount fairly reflected the effects of the accident on Plaintiff. Plaintiff sought clarification of Defendants' offer by letter dated December 28, 2005. Defendants responded on January 9, 2006, offering the following as justification for their offer:

> The offer is based on what we believe will be the outcome at trial. . . . [I]t appears to be the case that Mr. Sullivan had longstanding back and neck problems before the accident and, to the extent they are genuinely worse or more persistent now than before the accident (as opposed to being maintained, consciously or subconsciously, by the fact that a lawsuit is pending), this represents merely the natural progression of those conditions. The accident does not appear to have been a significant milestone. As to earning and wage loss, Mr. Sullivan has intelligence and skills that would enable him to perform many kinds of jobs conforming even to the restrictions Dr. Owen stated, in which he could earn as much as or more than he was earning when the accident happened. In conclusion, it does not appear to me that Mr. Sullivan has sustained any great losses, attributable to the accident, in the categories you enumerated.

[Record No. 48, Ex. 8, Walker letter of 1/9/06].

Mr. Walker's response was both prompt and reasonable, pointing to several factors relied upon by Defendants in arriving at their offer of settlement.  Although Walker did not apportion the $10,000 among the various elements of damages as requested in Feld's letter, he offered a very thorough response, touching upon several of the reasons that Defendants' made the offer of $10,000.  There is no dispute that Defendants offered prompt, reasonable explanations for the basis of their denial of Plaintiff's one million dollar demand and their compromise settlement offer of $10,000.  Furthermore, even if the Court were to find that the explanations were unreasonable, which it does not, there is no evidence that the explanations were made inadequate by any evil motive or reckless indifference on the part of Defendants.  Plaintiff's bad faith claim fails to the extent that is it founded upon a violation of KRS 304.12-230(14).

Citing *Farmland Mut. Ins. Co. v. Johnson,* 36 S.W.3d 368 (Ky. 2000) and *Hamilton Mut. Ins. Co. V. Buttery*, 220 S.W.3d 287 (Ky. Ct. App. 2007), Plaintiff also appears to argue that Illinois-National engaged in a bad faith settlement practice simply as a function of retaining AIG to serve as the claims handler for Plaintiff's claim.  While the UCSPA and *Farmland* obligate an insurer to "investigate, negotiate, and attempt to settle [a] claim in a fair and reasonable manner," *Farmland*, 36 S.W.3d at 375, they do not prescribe the manner in which that duty must be carried out.

16

Contrary to Plaintiff's assertion, *Buttery* does not interpret Kentucky law to prohibit an insurer from retaining another entity to investigate and negotiate claims. *Buttery* merely holds that an insurer cannot delegate its statutory duty of good faith and fair dealing. While itself continuing to owe a duty of good faith, Illinois National acted well within its right in enlisting the services of AIG to investigate, negotiate and attempt to settle Plaintiff's claim.

## 2. Surveillance

Plaintiff complains that he was put under surveillance during the litigation of his personal injury claim and that this, coupled with Defendants' revelation of the surveillance tapes three hours into the mediation session, constitutes bad faith.

Defendants' attorney, Tim Walker, responded to Plaintiff's discovery requests in July of 2005. The surveillance at issue was conducted in late November 2005 and mid-December 2005. The mediation occurred on January 11, 2006. Approximately three hours into the mediation, Defendants disclosed the existence of the surveillance tapes. It is undisputed that Plaintiff did not view the surveillance footage during the mediation; however, whether or not Plaintiff requested to view the surveillance footage during the mediation is disputed.

Offering no support for his position, Plaintiff contends that *immediately* upon receiving the surveillance tapes Defendants should

have disclosed the existence of same to Plaintiff and that Defendants' failure to do so evidences their bad faith and their intent to reveal the surveillance at mediation solely for the purpose of putting Plaintiff under pressure to settle his claim for less than its fair value. As Plaintiff's personal injury claim was litigated in Fayette County Circuit Court, it was governed by the Kentucky Rules of Civil Procedure ("KRCP"). KRCP 26.05 requires that a party who has previously responded to requests for discovery has a duty to seasonably supplement those responses if "he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment." KRCP 26.05(b)(ii). Although the Court finds no reference to the particular discovery request to which the surveillance tapes would be responsive, the parties appear to agree that the surveillance tapes would have been responsive to a request for discovery.

Kentucky courts have offered little guidance for determining what constitutes a seasonable supplementation to discovery requests, holding only that attempts to supplement interrogatories after trial has commenced are not seasonable. *See Fratzke v. Murphy*, 12 S.W.3d 269 (Ky. 1999); *see also Prater v. Castle*, 139 S.W.3d 921 (Ky. Ct. App. 2003). This Court finds no basis in law or in logic for concluding that supplementation of discovery requests approximately three weeks after receipt of new information

18

is not seasonable as required by KRCP 26.05.  Even Plaintiff points out that Defendants were only in possession of the surveillance tapes approximately two weeks prior to mediation [RN 54 at 8], and that period included the end of year holidays.  Plaintiff was provided with a copy of the surveillance footage within one week of the mediation and settled his claim nearly four months later.

There is no evidence that Defendants breached the discovery process or acted in bad faith in their supplementation of the discovery requests.  Accordingly, Defendants are entitled to an award of summary judgment on Plaintiff's bad faith claim to the extent that it concerns the surveillance footage.

## C.  Mental Anguish

Defendants filed a Motion for Summary Judgement on Claims of Mental Anguish [Record No. 46].  In his response to the motion [Record No. 53], Plaintiff clarifies that he did not bring a separate and distinct claim for mental anguish or infliction of emotional distress.  Plaintiff only seeks to recover damages for mental anguish as an element of his bad faith claim under the UCSPA. [Record No. 53 at 4].  This Court has determined that there is no evidence to support Plaintiff's claim under the UCSPA.  Accordingly, Plaintiff is not entitled to recover damages for mental anguish and Defendants' motion for summary judgment on such claims shall be denied.

## D.  Consumer Protection Act, Fraud and Abuse of Process

The Court agrees with Plaintiff that it is not clear whether Defendants moved for summary judgment on Plaintiff's claims of fraud, abuse of process and violation of Kentucky's Consumer Protection Act.   In their reply brief [Record No. 62 at 4], Defendants suggest that the Court dismiss the fraud and abuse of process claims as spurious, however, *sua sponte* dismissal would not provide Plaintiff with an opportunity to address the perceived deficiencies of his claims.

Plaintiff's cause of action under Kentucky's Consumer Protection Act, KRS 367.170, must fail as there is no third-party cause of action for violation of the Consumer Protection Act. "Although *Stevens v. Motorists Mut. Ins. Co.*, Ky., 759 S.W.2d 819 (1988), provides that the purchase of an insurance policy is covered under the Consumer Protection Act, we have found no cases extending coverage of the Act to third-party claims. The insured who purchased the policy is the one who may properly have a claim for unfair practices against the insurer." *Anderson v. National Sec. Fire and Cas. Co.,* 870 S.W.2d 432, 435-36 (Ky. Ct. App. 1993); see also *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437 (Ky. 1997)("[the Consumer Protection Act] has no application to third-party claims and thus no application to accident victim's claim against automobile liability insurer.").

To prove an action for fraud, the party claiming the harm must establish the following six elements by clear and convincing

evidence: "a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury." *United Parcel Service Co. v. Rickert,* 996 S.W.2d 464, 468 (Ky. 1999)(citing *Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 359 (Ky. Ct. App. 1978)). As an initial matter, the Court does not believe Plaintiff plead his claim of fraud with particularity as required by Fed. R. Civ. P. 9. Even assuming, however, that the fraud claim was plead with particularity, having reviewed the mountains of evidence submitted in support of the numerous motions for summary judgment, the Court finds no evidence of false material representations made by Defendants and relied upon by Plaintiff. However, out of an abundance of caution, the Court will allow Plaintiff ten days to show cause why his fraud claim should not be dismissed with prejudice.

Plaintiff's abuse of process claim meets the same fate as his fraud claim. A claim for abuse of process is intended to punish "the irregular or wrongful employment of a judicial proceeding." *Simpson v. Laytart*, 962 S.W.2d 392, 394 (Ky. 1998)(citing *Stoll Oil Refining Co. v. Pierce,* 337 S.W.2d 263 (Ky. 1960)). "The essential elements of an action for abuse of process are (1) an ulterior purpose and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Id.* (citing *Bonnie Braes Farms Inc. v. Robinson,* 598 S.W.2d 765 (Ky. Ct. App. 1980) and

*Williams v. Central Concrete Inc.,* 599 S.W.2d 460 (Ky. Ct. App. 1980)).  The Court does not believe Plaintiff has established the essential elements of a cause of action for abuse of process; however, again out of an abundance of caution, Plaintiff shall be allowed ten days from the date of entry of this Memorandum Opinion and Order in which to show cause why his abuse of process claim should not be dismissed with prejudice.

### IV.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED**:

1) That Defendant AIG's Motion for Summary Judgment [Record No. 45] be, and the same hereby is, **GRANTED**;

2) That Defendants' Motion for Summary Judgment on Claims of Mental Anguish [Record No. 46] be, and the same hereby is, **DENIED**;

3) That Defendant's Motion for Summary Judgment on Plaintiff's bad faith claim [Record No. 47] be, and the same hereby is, **GRANTED**;

4) That Plaintiff's Motion for Partial Summary Judgment on his bad faith claim [Record No. 48] be, and the same hereby is, **DENIED;**

5) That Plaintiff shall have **ten (10) days** from the date of entry of this Memorandum Opinion and Order in which to **SHOW CAUSE** why his fraud and abuse of process claims should not be dismissed with prejudice; and

22

6) That all scheduled proceedings in this matter be, and the same hereby are, **CONTINUED GENERALLY.**

This the 27th day of August, 2008.

Signed By:

*Joseph M. Hood*

Senior U.S. District Judge